## City of Lowell *vs.* John Hadley.

The authority of the city council of Lowell to lay out streets within the city is not like that of selectmen to lay out town ways, but is like that of county commissioners to lay out highways: And therefore, if said city council lay out a street by an order apparently regular and formal, a party who has an easement in the land over which the street is laid cannot, in an action against him to recover the expense of a sidewalk constructed on the side of such street, by order of the city coun cil, successfully object that all persons interested had not due notice of the in-tention to lay out the street; but, in order to raise this question, he must resort to a writ of *certiorari.*

By an ordinance of the city of Lowell, a report of a committee of the city council, in favor of laying out a street, after it is made to the council, " shall remain in the city clerk's office seven days at least, before said council proceed to act thereon :" A report of such committee, in favor of laying out a street, was made to the council on the 27th of June 1840, and remained in the city clerk's office till July 8th 1840, when it was recommitted to the same committee, who made no further report: In the board of aldermen, on the 17th of October 1840, the report, which had been recommitted, came up from the common council, accompanied by a res-olution to lay out the street; and on the 10th of November 1840, said resolution passed both branches of the city council. *Held,* that the street was legally laid out conformably to the said ordinance.

An assessment on the owner of buildings in the city of Lowell, for the expense of a sidewalk constructed on a street in front of the buildings, by order of the city

council, pursuant to the authority given by the city charter and ordinances, is con-
stitutional and valid.

The city council of Lowell, by an ordinance, directed a sidewalk on W. Street to be con-
structed, by the superintendent of streets, 796 feet in length, and 8 feet in width, of
brick and edge stones in front of occupied lots, and of timber and planks in front of
vacant lots : The sidewalk over a part of the length in front of H.'s lot was built, in
consequence of his request, of flag stones, in three rows, with paving stones between;
and in some other places, it was built of flag stones and paving stones, across private
entrances to yards, with the assent of the immediate abutters, but without asking
H.'s consent : In one place near H.'s lot, the sidewalk was made but seven feet
wide, and between his lot and one of the most frequented streets in the city, for a
length of sixty three feet, the sidewalk varied from that width regularly to seven and
a half feet, and for a further length,of sixty eight feet, increased gradually from
seven and a half to eight feet in width : In a remote and comparatively unfre-
quented part of W. Street, the sidewalk, for a little more than forty feet in length,
was made considerably less than eight feet wide : H. was not asked to consent,
and did not consent to these alterations. *Held*, in a suit against H. to recover the
expense of the sidewalk constructed in front of his lot, (which expense was
admitted by him not to be unreasonable in amount,) he was bound to pay it, not-
withstanding the departure from the city ordinance in the making of the sidewalk.

The city ordinance of Lowell, *c.* 16, § 3, which requires the superintendent of streets
to make a report to the auditor of accounts, of the expense incurred in building
a sidewalk, "within ten days from the finishing of the sidewalk," is merely direc-
tory; and his omission so to do furnishes no defence to an action brought against
the owner of a lot, in front of which a sidewalk is built, to recover the expense
of building it.

ASSUMPSIT to recover the amount of an assessment on the
defendant, for the expense of a sidewalk constructed by the
plaintiffs, in front of his land, in Lowell. The declaration con-
tained special counts, setting forth certain provisions of the
plaintiffs' charter, as a city, certain ordinances passed by the city
authorities, and certain resolutions of the city council, concern-
ing the construction of the sidewalk in question, and then averred
the construction thereof, conformably to such resolutions. There
was also a general indebitatus count, for work and labor, money
paid, &c. The case was submitted to the court on the follow-
ing agreed statement of facts:

"In the year 1829, the Proprietors of the Locks and Canals
on Merrimack River laid out, over their own land, a way or
street, called Worthen Street, which has ever since continued
open, and has been used as a street by all persons having occa-
sion to pass over it. At various times before November 1840,
they made sales of most of the building lots, on both sides of
said street, to various persons, describing said lots as bounding

on Worthen Street, and granting to the several purchasers a perpetual right of way over it. Said street was afterwards laid out by the city authorities as a public street or town way, in the following manner, if at all: The petition of Erastus Douglass and others was presented to the city council, on the 13th of May 1840, and was referred to a joint committee on laying out streets. The committee reported on said petition, June 27th 1840, and their report remained seven days in the city clerk's office, before it was acted upon. On the 8th of July 1840, the report was recommitted by the council to the same committee. It does not appear, by the records or otherwise, that any new or further report, or any report, was ever made on the subject by the committee. On the 17th of October 1840, in the board of aldermen, the report which had been recommitted came up from the common council and was read. A resolution accompanying the same, and which had that day been introduced into the common council, (a copy of which resolution is in the margin,*) was also read, and, on the 10th of November 1840, passed both branches of the city council. Before making their report on said petition, the committee gave due notice to said Proprietors, who were owners in fee of the soil over which said street passed, but gave notice to no other person. The defendant then owned, and still owns, a lot of land, with buildings thereon, adjoining said street, and on the northwest side thereof.

* Resolution for laying out Worthen Street as a town way.

City of Lowell: In the year eighteen hundred and forty. Resolved by the mayor, aldermen and common council of the city of Lowell, in city council assembled, as follows:

The public convenience and necessity require that Worthen Street be laid out as a town way, of the width of forty feet, bounded on the westerly side thereof by a line described as follows, viz: Beginning at Mechanic Street, at the southeasterly corner of a lot of land conveyed by the Proprietors of Locks and Canals on Merrimack River to E. and R. Douglass, at which corner a stone bound is erected; thence running north, thirty three degrees fourteen minutes east, to Lowell Street; thence in the same course across Lowell Street to the southeasterly corner of a certain brick building, usually known by the name of the "Bank Block;" thence along the east end of said building to Merrimack Street; and the same is hereby ordered to be laid out as a public street or town way.

" The petition of Lemuel Porter and others, for a sidewalk on the northwest side of said street, was presented to the city council on the 17th of November 1840, and was referred to the committee on laying out streets. That committee, on the 2d of December 1840, reported that the petition be referred to the next city council, and the council so voted. On the 7th of April 1841, in the new city council, the said petition was taken from the files, and committed to the joint committee on laying out streets. Said committee, on the 14th of June 1841, made their report, which remained seven days in the city clerk's office, before being acted upon. The city council, on the 14th of July 1841, passed a resolution (a copy of which is in the margin,*) ordering that a sidewalk be constructed on the northwest side of Worthen Street. No vote was passed accepting the report of the committee. The notices, required by the ordinance on laying out sidewalks, were duly given by the commit tee. Before the passing of the resolution last aforesaid, and while the same was under discussion, in the city council, a motion was made to amend said resolution, so as to make it require said sidewalk, in front of the dwelling-house hereinafter referred to, to be built only as wide as it was afterwards built, (as hereinafter stated,) and the council refused to make such amendment.

* Resolution for constructing a sidewalk on the northwest side of Worthen Street, between Merrimack and Mechanic Streets.

City of Lowell: In the year eighteen hundred and forty one. Resolved by the mayor, aldermen and common council of the city of Lowell assembled, as follows:

That the public convenience and necessity require that a permanent sidewalk in front of occupied lots, and a temporary sidewalk in front of vacant lots, be laid on the northwest side of Worthen Street, between Merrimack and Mechanic Streets, $796\frac{84}{100}$ feet in length, and eight feet in width; and *eight feet in width of the northwest side of said Worthen Street, is hereby* appropriated, set off and reserved, as a sidewalk, between Merrimack and Mechanic Streets.

*The superintendent of streets is directed to cause said sidewalk to be forth-*with laid down and constructed of brick and edge stones in front of occupied lots, and of timber and plank in front of vacant lots, at the expense of the abutters; and *to cause suitable flagging stones to be laid across Lowell Street* at its intersection with the northerly side of Worthen Street, at the expense of the city; the elevation of the sidewalk to be the same with the sidewalks on Merrimack and Lowell Streets.

" The sidewalk in question was then built by the city, and under the direction of the superintendent of streets, who made the report of expenses, names, &c. required by the ordinance, to the city auditor, showing the expense of the sidewalk in front of each estate. The auditor immediately assessed upon the several owners of the lots their respective proportions of said expenses, and made report of said assessment to the city council, at their regular meeting. The said assessments were confirmed by said council, the 16th of October 1841, and recorded by the auditor, who immediately made out, and delivered to the city treasurer for collection, a bill against each person assessed. The amount assessed against the defendant, as the expense of the sidewalk in front of his buildings, was $111, and is admitted to be not an unreasonable charge in amount. It is admitted that due notice was afterwards given to, and demand made upon, the defendant. No evidence exists fixing the time when the sidewalk was completed, or showing that the superintendent of streets made his report within ten days from its completion.

" The sidewalk in front of the defendant's premises was 115 feet in length, of which 89 feet in front (wholly or principally) of his livery stable, carriage house, and shed, was built of granite flag stones, in three rows, with paving stones between, which change in the sidewalk was in consequence of the defendant's request. In three or four other places, varying in length from twelve to eighteen feet, the sidewalk was also built of flagging and paving stones, across private entrances to yards, with the consent of the immediate abutters, but without asking or obtaining the defendant's consent. In one place near the defendant's premises, the sidewalk is but seven feet wide, and, for a length of sixty three feet, varies from that width regularly to seven and a half feet; and, for a further length of sixty eight feet, increases gradually from seven and a half to eight feet in width; these places being between the defendant's premises and one of the most frequented streets in the city. In another, and remote part of the street, where there is comparatively little passing, a fence, in front of a dwelling-house, encroaching some what upon the sidewalk, was not removed, and contracts the

width of the sidewalk, in a length of thirty five feet and eight inches, to five and a half feet; and in a length of seven feet, opposite and at certain door steps, to three and a half feet. In these alterations the defendant was not asked to consent, nor did he consent.

" The front or exterior line of the sidewalk is straight and regular, and the superintendent was under the general direction of a committee of the city council; but the council, as such, has never acted directly upon the subject of said alterations, and with the exceptions aforesaid, the construction of the sidewalk is in conformity to the terms of the aforesaid resolution of July 14th 1841.

" The plaintiffs allege, in their declaration, that the superintendent of streets made his report to the auditor within ten days from the completion of the sidewalk, and that the same was built of brick and edge stones, as ordered by said resolution, in front of the defendant's house; although the fact is as hereinbefore stated, on those points.

" If upon these facts the plaintiffs are entitled to recover, judgment is to be rendered for them for $111 and such further sum and interest as the court may order; otherwise, judgment is to be rendered for the defendant. And it is agreed that the charter and ordinances of the city of Lowell may be used by either party, together with the petitions and reports aforesaid; and that the facts recited in said reports are to be taken as true."

This case was argued in January 1844.

*J. G. Abbott,* for the defendant. Worthen Street was not legally laid out. No notice was given of the intention to lay it out, except to the Proprietors of the Locks and Canals. Yet the defendant had a perpetual easement in the land, viz. a right of way, and was entitled to notice, as a party interested. By the Rev. Sts. *c.* 24, § 67, " no town way shall be laid out or altered unless, seven days at least previously thereto, a written notice of the intention of the selectmen to lay out or alter the same shall be left at the usual place of abode of the owners of the land," &c. The ordinance of the city of Lowell, *c.* 18, § 1

16 *

requires similar notice " to the several owners of all land over which a street or town way is proposed to be laid out." The " owners of the land," in the revised statutes, do not mean merely the owners of the fee. " The land " comprises the whole estate, including every easement in the land. A right of way is real estate. *Spear* v. *Bicknell,* 5 Mass. 129.

The city ordinance also requires (*c.* 18, § 2) that when a committee report to the city council that a street ought to be laid out, the report " shall remain in the city clerk's office for the term of seven days at least before said council proceed to act thereon." The report of the committee, being recommitted by the council, became of no effect; and no further report was made by the committee. The action of the council, in laying out the street, was therefore contrary to the ordinance.

The sidewalk was not built conformably to the resolution establishing it; but was built of a different width, and of different materials. And no principle is better settled than this, that where a burden is imposed on a person by statute, the statute must be strictly pursued, in order to charge him. *Franklin Glass Co.* v. *White,* 14 Mass. 286. *Andover, &c. Turnpike* v *Gould,* 6 Mass. 40. *Stetson* v. *Kempton,* 13 Mass. 272. *Colburn* v. *Ellis,* 5 Mass. 427. *Libby* v. *Burnham,* 15 Mass. 144. *Thayer* v. *Stearns,* 1 Pick. 482. *Holden* v. *Eaton,* 7 Pick. 15, and 8 Pick. 436. So far as the defendant assented to the building of the sidewalk differently from the mode prescribed by the resolution of the city council, perhaps he may not be permitted now to object to that change; but this is no answer to the fact, that deviations were made, without his consent, in several other places.

By the city ordinance, *c.* 16, § 3, the superintendent of streets is required to " keep an exact account of all expenses and outlays required and incurred in building a sidewalk, and to report the same in writing, within ten days from the finishing of the sidewalk, to the auditor of accounts, with the names of the persons owning estates adjoining the sidewalk, and chargeable with any part of such expenses." This was not done in the present case, and the omission to do it exonerates the defendant. The

statute of limitations does not begin to run, until this report is made; so that if it is not limited to ten days, the liability of the defendant may be extended from six years to an indefinite time. *Boston* v. *Amesbury*, 4 Met. 281. Under the law requiring collectors of taxes to return to the selectmen, fifteen days before the second Monday in March, lists of those who have paid taxes, a return made in less or more than fifteen days is insufficient. *Claflin* v. *Cheney*, 4 Pick. 118. *Adams* v. *Moulton*, 7 Pick. 286. Besides; as the plaintiffs' declaration avers that the superintendent's report was made to the auditor within ten days, there is a fatal variance between the allegation and the proof.

The resolution for the building of the sidewalk is void for inequality. *Commonwealth* v. *Worcester*, 3 Pick. 462. *Vandine's case*, 6 Pick. 191. *City of Boston* v. *Shaw*, 1 Met. 130. The inequality is this : It is made a tax on land, and, in order to be constitutional and legal, it must be "proportional." Const. of Mass. *c.* 1, § 1, art. 4. The burden should be borne, either in proportion to the value of the estate, or to the amount of benefit to be derived from the walk. But the resolution in question disregards both these considerations, and requires that each estate shall be charged with all the expense of the work in front of it. Though the value of a vacant lot is as much enhanced by the sidewalk as an occupied lot, yet the power is given to free the latter altogether from the burden, or only to subject it to a much less expense than is imposed on the former. And as there is no power, after a sidewalk is built, to compel the owner of a lot now vacant, when it shall be occupied, to build a permanent sidewalk, the owner of such vacant lot escapes from his just proportion of the burden. If it shall be said that the city charter authorizes the city council to cause sidewalks to be constructed at the expense of the owners of land, the answer is, that such authority cannot be constitutionally conferred.

*S. Ames,* for the plaintiffs. In respect to the defendant's objection, that Worthen Street was not legally laid out, the reply is, that the city council, having the general power to lay

out streets, could lawfully legislate as to the mode of proceeding. This was done by the ordinance, *c.* 18, which conforms to the Rev. Sts. *c.* 24, § 67, and requires notice of the intention of laying out to be given to the owners of the land over which the street is proposed to be laid. This ordinance obviously considers *the owners of the soil,* over which the street is to pass, as the parties who are to have notice of the contemplated action of the city authorities. It is they whose property is about to be appropriated to the public use, and they alone can have a legal claim to compensation. The ordinance corresponds literally with the provision of the Rev. Sts. *c.* 24, § 67, .n reference to the laying out of town ways. The laying out of the street was not an encroachment on the defendant's right of way, but an enlargement of it. So far from taking it away or impairing it, it makes it permanent, and renders the plaintiffs forever liable to keep it in repair. .

The objection, which is made on account of the recommitment of the committee's report, cannot prevail. The object of the formalities required by the city ordinance, *c.* 18, is to give to every one, whose land is to be appropriated to public use, an opportunity to object, and to put the council in possession of the requisite information. By the making of the report, the council is officially and formally made acquainted with the facts of the case. The ordinance does not limit the time, after seven days, within which the council shall act on the subject, nor require them to act immediately. Nor does it prescribe what shall be done with the report. The report was *read,* about four months after it was made, and was the basis of the final action of the council. Though the recommitment may have been unparliamentary, it was not equivalent to a rejection of the petition on which it was founded.

But there is another answer to both the above objections. Worthen Street had been for years open to public travel, as a street. The owners of the soil had precluded themselves from the right of closing it, and the owners of the adjoining estates were vested with the right of treating it as a street. It was 'rrevocably dedicated to public use, as a street, so far as the

owners were concerned. To make it a street, nothing remained but the acceptance of the city; and that acceptance is not wanting. The vote to lay it out as a street (even if informal in itself) would constitute such an acceptance. The vote to lay down sidewalks therein is equally strong. The street was practically a street, long before the city charter was enacted.

As to the objection that the sidewalk was not finished in conformity to the resolution, there is nothing in the case which shows that this variance (generally) was not accidental, or that it was material, either to the benefit of the city or the prejudice of the defendant. In point of fact, and so far as the same is opposite to the defendant's estate, no alteration or variance is alleged, except such as he consented to. By the city charter, § 9, (*St.* 1836, *c.* 128,) the city council is authorized to "cause permanent sidewalks to be constructed in front of buildings at the expense of the owners thereof, and temporary ones in front of vacant lands, at the expense of the abutters, or of the city;" and the defendant is chargeable, if at all, for the expense incurred in building the sidewalk opposite to his own estate. The city, for the sake of convenience, and in order to act on a class of cases, took the sidewalk together, in their proceedings; but there is nothing to show that the defendant is concerned, or has any interest, legal or equitable, in remote parts of the sidewalk. It is not alleged by the defendant, that there has been any want of good faith on the part of the city authorities. Probably the resolution in question is to be considered rather in the light of a direction to the officer having charge of the work, than as an attempt to define the rights of proprietors relatively to each other. If the work is not yet fully completed, in a remote part, and the defendant's charges are not thereby increased nor diminished, how does it excuse him from his legal liability? The completion of the whole is not a condition precedent to his liability. Even supposing the variance important, it will not extend to the whole sidewalk. See *Commonwealth* v. *Weiher*, 3 Met. 445.

The provisions in the city ordinance, *c.* 16, § 3, are purely directory, for the instruction of the city officers; and the wan

of evidence, therefore, that the superintendent of streets made a return to the auditor of the expense of the sidewalk, within ten days from the finishing thereof, does not exonerate the defendant from his liability.

The plaintiffs' declaration contains a general indebitatus count, on which they are entitled to recover, notwithstanding the alleged variance between the other counts and the proof. It is shown by the agreed facts, that the defendant requested that the sidewalk opposite to his estate should be constructed as it was constructed. The plaintiffs therefore put their claim upon the ground that they have built a sidewalk for the defendant, and at his request.

In the city charter, (*St.* 1836, *c.* 128, § 9,) the legislature have, in express terms, given the city council power to "cause permanent sidewalks to be constructed in streets, in front of buildings, at the expense of the owners thereof." The constitutionality of this power, whether it is expressly conferred by the legislature, or not, is fully recognized in *Goddard's case*, 16 Pick. 504, and in *City of Boston* v. *Shaw*, 1 Met. 137. See also *Paxson* v. *Sweet*, 1 Green, 196.

*Abbott*, in reply. The suggestion that the defendant's right of way was not taken, but was enlarged, by laying out the street, is unfounded. The exclusive property of the abutters in the perpetual right of way is just as much taken, whether it is made a public street, or is entirely shut up. While it was a private way, the owners had the exclusive control of it; but that exclusive property is destroyed by making it a public street. While it was a private way, the owners were not subjected to the burden of building sidewalks and clearing off snow. But if this action can be supported, they are subjected to these burdens, by the making of it into a public street. See *Woodyer* v. *Hadden*, 5 Taunt. 125.

This difficulty in the plaintiffs' case seems insuperable, viz. that no such sidewalk as the city council directed has been made ; and that the council refused to order the sidewalk, in front of a certain dwelling-house, to be made as it is made, though a motion to that effect was offered.

The plaintiffs cannot recover on the indebitatus count. The city has no authority to build any sidewalk, except by virtue of the ordinance, c. 16, and if that is not strictly followed, the defendant is not chargeable. The agreed facts do not find that the defendant requested the plaintiffs' officers to build a sidewalk opposite to his estate, partly of bricks and edge stones, and partly of three rows of flag stones. He never requested them to build any sidewalk, of any description or material. The agreed facts only show that the *change* in the sidewalk was in consequence of the defendant's request.

Where a statute creates a new power, and a way of enforcing it, that way must be followed. *City of Boston* v. *Shaw*, 1 Met. 138, 139, and cases there cited. *Crosby* v. *Bennett*, 7 Met. 17.

DEWEY, J. The objection to the validity of this assessment, that it is not made upon the estates proportionally and equally, in reference to the value of the several lots to which the sidewalk is appurtenant, is attempted to be maintained upon principles of constitutional and statute law applicable more particularly to taxation for those objects for which taxes are assessed for general purposes of defraying state, county, and town expenditures, and which have no direct bearing on cases like the present, when the assessment is of a limited and local character, and is authorized by special statute provisions regulating the subject. This point was somewhat considered in *Goddard's case*, 16 Pick. 504, and, as it seems to us, furnishes no sufficient ground of defence.

The ninth section of the charter of the city of Lowell (*St.* 1836, c. 128,) authorizes the city council to " cause any streets, public places, or squares, in the city, to be graded, paved," &c. and to " cause permanent sidewalks to be constructed on the same, in front of buildings, at the expense of the owners thereof, and temporary ones in front of vacant lands, at the expense of the abutters, or of the city."

The first inquiry therefore is, whether Worthen Street was such a street or public place as would authorize the city council of Lowell to direct the construction of a sidewalk on the same,

at the expense of the abutters and owners of buildings on such street. It is contended that Worthen Street was not legally laid out as a street, by the city council. The most prominent ground of objection is, that the location and establishment of such street were illegal and void, by reason of want of notice to the defendant of the proceedings had thereon; he being an owner of land over which said street was proposed to be laid. Such notice to all the owners of real estate is said to be required, as well by force of the great principles of constitutional law, as by the express provisions of the ordinances of the city of Lowell, directing the mode of laying out streets and ways. It is quite sufficient for this case, that it is required by the latter, in *c.* 18, § 1. This ordinance requires "notice to the several owners of all land over which said street is proposed to be laid." Was the defendant an owner of land within this provision? That depends upon the answer to be given to this question: Is a right of way, over the land which is proposed to be taken for the street, such an interest as creates ownership of the land, within the meaning of the ordinance? The decision of this point is unnecessary in the present case, for reasons which will be presently stated. Suppose the doctrine contended for by the defendant on this point to be correct, and this right of way to be an interest in real estate, requiring notice to the party having such easement, before the easement be destroyed by the creation of a public street, the further question at once arises, whether the omitting to give such notice will authorize the defendant to interpose a defence to the present demand upon him, or whether he must first vacate the adjudication laying out the street, by instituting proper proceedings and having the same quashed on *certiorari*. If this were a question arising upon the laying out of a public highway, and it could be shown that such highway had been actually laid out by the county commissioners, by an order apparently regular and formal, it would not be competent for the defendant incidentally to raise the question of due notice to the parties interested; but he must resort to a writ of *certiorari*. The same rule applies to the laying out of streets, in the city of Boston, by the mayor and aldermen, who,

in that city, have succeeded the county commissioners in that duty ; the laying out of such streets being held to be of similar character with that of public highways laid out by county com- missioners. The doubt then is, whether the laying out of streets by the city council of Lowell, under the provisions of the city charter, is subject to the same rule, or whether this is to be treated as a town way. If this be considered the same as the laying out of a way by selectmen, which is to be approved by a vote of the town, and constituting what is usually known as a town way, then it would be competent for the defendant incidentally to raise the objection of want of notice. *Common- wealth* v. *Weiher,* 3 Met. 445. But, upon full consideration of this point, we are of opinion that the laying out of streets by the city council of Lowell is of the same character, and ought to have the same effect, as the laying out of streets by the mayor and aldermen of the city of Boston.

We perceive no objection to the laying out of this street, on the ground that the report of the committee did not remain in the clerk's office seven days before being acted upon, or because it was recommitted. The first of these objections seems to be unfounded in fact, and the second is of no avail, as both branches of the city council took up the subject upon the origi- nal report, and, by accepting that report, virtually discharged the committee from any further action thereon.

Supposing the preceding objections to be unavailing, it is then further urged, that this assessment upon the defendant cannot be enforced, by reason of certain defects in the pro- ceedings respecting the sidewalk. 1. In reference to the con- struction of the sidewalk, it is said that it does not conform to the ordinance directing its construction. 2. That no report of the expenses of construction was made to the auditor within ten days after its completion.

As to the *first,* the ordinance directed the sidewalk to be eight feet in width, and to be constructed of brick and edge stones in front of occupied lots, and timber and plank in front of vacant lots. It is admitted that eighty nine of the one hun dred and fifteen feet, in front of the defendant's premises, were

built of granite flag stones, with paving stones between, which was so done, however, at the request of the defendant ; which will estop him from making any objection on that account. Then, in certain other places, for short distances, it was also built in the same manner, with the consent of the immediate abutters, but without any direct assent of the defendant. The city ordinance, *c.* 16, § 3, requires " that every sidewalk shall be built, by the superintendent of streets, of such materials and dimensions as the city council may have prescribed." The question is, whether the deviation from the ordinance is fatal to the plaintiffs. There was a deviation, an obvious one. In connection with this, we may also consider the objection arising from the departure from the ordinance as to the width of the sidewalk. It was constructed, a part of the distance, seven to seven and a half feet wide, under an ordinance directing it to be constructed eight feet wide. Is this defect in the width fatal to the assessment of a tax for it? These objections, as to the departure from the city ordinance in the manner of constructing the sidewalk, doubtless present the strongest ground of defence that has been taken to the plaintiffs' right to maintain this action. The general principle, that the city ordinance must be adhered to, is a sound one. There is, however, as we think, a sufficient answer to this objection, in the present case, which will take the case out of this general rule. First, as to the alteration in the mode of construction, in certain places, corresponding to the alteration made opposite to the premises of the defendant, and by his request, we think his assent thereto may be inferred from his request for the change in the construction in front of his own premises. Then, secondly, as to the deficiency in the width of the sidewalk, we think that was a matter rather for the city council to deal with than the defendant. If the change in this respect had been such as to increase the assessment upon the defendant, he might perhaps take the objection. But the facts negative that ground ; the objection being that a sidewalk was constructed of less width, and therefore of less expense, than was required by the city ordinance.

Without prescribing any general rule on this subject, and

City of Lowell *v.* Hadley

conceding that the subject of deviation from the ordinance is not free from difficulties in limiting the extent to which departures may be permitted in the mode of construction, the court are of opinion, that the grounds of defence here relied upon are insufficient, and that, when the deviation is made at the request or with the assent of the land owner liable to be assessed, he should be estopped from setting it up ; and also when the departure is not substantially and palpably an intended deviation from the ordinance ; and especially when not attended with any substantial increase of expense, and an assessment is made therefor by the city authority, it is not competent for one, who is otherwise duly assessed, to avoid the payment of his assessment, by raising the objection of a departure from the ordinance in the mode of construction.

The *second* objection taken is, that the city ordinance, *c.* 16, § 3, requires the superintendent of streets to keep an exact account of all expenses incurred in the construction of a sidewalk, and to report the same, in writing, within ten days after the work is completed, to the auditor of accounts. The case stated by the parties finds that no evidence exists showing any such report made within ten days. Assuming that no such return was in fact made within that period, the question is, whether this is a condition precedent to the making of a valid assessment, or is merely directory to the superintendent, and intended to secure the general faithful discharge of the duties assigned to him, and to facilitate the keeping of the accounts of the various disbursements of the city. It seems to us to be only directory, and not a condition precedent, without the strict performance of which an assessment will be illegal. Cases somewhat analogous, where positive statute provisions have been held to be only directory, may be found in *Williams* v. *School District in Lunenburg,* 21 Pick. 76, and *Pond* v. *Negus,* 3 Mass. 230.

Upon the whole matter, therefore, the result is, that the plain tiffs are entitled to recover the amount assessed on the defendant.